[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12374
_____

D.C. Docket  No. 8:11-cv-00262-RAL-EAJ

JOEL E. CHANDLER, individually and
on behalf of all others similarly situated,
DEBORAH S. CHANDLER, individually
and on behalf of all others similarly situated,
ROBERT S. CHANDLER, individually and
on behalf of all others similarly situated,

Plaintiffs-Appellees,

versus

SECRETARY OF THE FLORIDA
DEPARTMENT OF TRANSPORTATION,
STEPHANIE C. KOPELOUSOS, individually,
KEVIN J. THIBAULT, individually,
RICHARD D. NELSON, individually,
RON RUSSO, individually,
BILL GRIMM, individually,
DENISE GARCIA, individually,
MILISSA BURGER, individually,
FRANKIE A. COOK,

Defendants-Appellants,

FANEUIL, INC.,

Defendant.

_____

No. 11-12425

_____

D.C. Docket  No. 8:11-cv-00262-RAL-EAJ

JOEL E. CHANDLER, individually and
on behalf of all others similarly situated,
DEBORAH S. CHANDLER, individually
and on behalf of all others similarly situated,
ROBERT S. CHANDLER, individually and
on behalf of all others similarly situated,

Plaintiffs-Appellees,

versus

SECRETARY OF THE FLORIDA
DEPARTMENT OF TRANSPORTATION, et al.

Defendants,

FANEUIL, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(September 19, 2012)

2

Before MARTIN, HILL and EBEL,[*] Circuit Judges.

PER CURIAM:

Joel E. Chandler, Deborah S. Chandler, and Robert S. Chandler, individually and on behalf of all others similarly situated, brought these actions against the Secretary of the Florida Department of Transportation and seven other officials of that department or the Florida Turnpike Enterprise and Faneuil, Inc., for injunctive relief and damages under 42 U.S.C. § 1983. The defendants in both cases moved to dismiss on the grounds of qualified immunity. The district court denied the motions and defendants appealed.

## I.

The Florida Department of Transportation (the "FDOT") operates the Florida Turnpike system. The FDOT is authorized to collect tolls from vehicles using turnpike roads. The persons who collect the tolls at toll stations along the turnpike are employees of Faneuil, Inc. ("Faneuil").

Motorists using the Florida Turnpike sometimes pay the small tolls charged with large denomination bills, including $50 and $100 bills. In order to guard against payment of the tolls with counterfeit bills, FDOT implemented a policy

---

[*]Honorable David M. Ebel, United State Circuit Judge for the Tenth Circuit, sitting by designation.

that required toll collectors to document certain observable vehicle information whenever the driver of a vehicle paid the toll with a large denomination bill.  The toll booth operator was instructed to record the vehicle's make, model, color, tag number and state of issuance in a Bill Detection Report.  This policy was voluntarily discontinued in 2010, before the lawsuits were filed.

Joel E. Chandler, Deborah S. Chandler, and Robert S. Chandler (the "Chandlers"), brought these actions against the Secretary of the Florida Department of Transportation and seven other officials of that department or the Florida Turnpike Enterprise (the "state defendants") and also against Faneuil alleging that the FDOT promulgated a policy of "detaining" motorists in violation of the Fourth and Fourteenth Amendments to the United States Constitution.  The Chandlers seek both injunctive relief and damages under 42 U.S.C. § 1983.[1]

---

[1]Count I seeks injunctive relief against all defendants.  The defendants moved to dismiss this count on grounds of mootness (the complaint itself alleges that the state defendants stopped the complained of practice in 2010) and insufficiency of the allegations to support the issuance of a preliminary or permanent injunction.  The district court denied the motion to dismiss this count. Although not immediately appealable, the "inextricably intertwined" issue of injunctive relief is resolved by our holding as to the constitutional claims made in Counts II and III.  *See Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000).  Count IV sought damages for a state claim of false imprisonment, which the district court dimissed and plaintiffs do not appeal.

The state defendants and Faneuil moved to dismiss Counts II and III of the complaint on the grounds of qualified immunity.[2]  The district court denied the motions, concluding that:

> While the Court has not found, nor the parties presented, a case on all fours, the conduct in this case violates the Fourth Amendment's guarantee against unreasonable searches and seizures which also encompasses the right to be free from arrest without probable cause. *See Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).  There is nothing to suggest in the complaint that the motorists had been engaged in any sort of criminal conduct.  Consequently, qualified immunity is denied.

We review *de novo* the district court's denial of the motion to dismiss on qualified immunity grounds.  *See Long v. Slaton*, 508 F.3d 576, 579 (11th Cir. 2007).

## II.

A government official acting in the course and scope of his employment is shielded from suit against him in his individual capacity if, while performing a discretionary function, his conduct did not violate a clearly established constitutional right of which a reasonable person would have known.  *Harlow v.*

---

[2]Although the Chandlers assert on appeal that Faneuil is not entitled to invoke the defense of qualified immunity because it is a corporate entity, this issue was never raised in the district court and, therefore, was waived and not properly before us. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  Even if Faneuil were not entitled to invoke the defense, however, our holding of failure to plead a constitutional violation moots the issue as to the Chandlers' § 1983 claim.

5

*Fitzgerald*, 457 U.S. 800, 818 (1982).[3]    To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law.  *See Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).  Although we take the allegations of the complaint to be true on motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 561 U.S. 662 (2009).

In this case, the Chandlers allege that the defendants "have engaged in a practice of detaining motorists and their passengers on the Turnpike System until such motorists provided certain personal information in exchange for their release."  The "personal information" alleged to have been "required" by defendants includes the vehicle make, model, color, tag number and state of issuance.  The complaint also alleges, without any detail, that "[o]ther information such as the vehicle occupant's race, gender, and relative age has also been

---

[3]We find no merit to plaintiffs' contention that the defendants were not exercising their discretionary authority in implementing this policy.  The defendants established that the acts they undertook are "of a type that fell within the employer's job responsibilities."  *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

6

recorded." Further, the complaint alleges that "[u]pon information and belief," toll collectors have also "required motorists to provide . . . drivers license information in exchange for their release." Finally, the complaint alleges that "[t]oll collectors have threatened motorists that they would employ the assistance of Law Enforcement Officers in the motorists' detention and in procuring the motorists' personal information when motorists have resisted toll collectors' demands for personal information in exchange for their release." The duration of these detentions is unspecified.

These factual assertions are insufficient to allege a violation of a constitutional right. For the following reasons, we hold that the district court's conclusion to the contrary is error and due to be reversed.

### III.

A "seizure" under the Fourth Amendment occurs "when the officer, by means of physical force or show of authority, terminates or restrains [a person's] freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks, citations, emphasis omitted). "[A] person has been 'seized' . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed

7

that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

The fact that a person is not free to leave on his own terms at a given moment, however, does not, by itself, mean that the person has been "seized" within the meaning of the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 436 (1991) (bus passenger's feeling that he was not free to leave when speaking to police not dispositive of seizure issue). "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *Id.* at 553-54 (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).

In Florida, a person's right and liberty to use a highway is not absolute; it may be regulated in the public interest through reasonable and reasonably executed regulations. *Thornhill v. Kirkman*, 62 So. 2d 740, 742 (Fla. 1953). Otherwise, "[i]t would produce an intolerable situation on the public highways to subscribe to a theory that they could not be summarily regulated in the interest of the public." *Id.*

The Chandlers concede, as they must, that an allegation of a toll booth stop, required by the State and enforced by the toll booth operator, does not, without

8

more, constitute a seizure within the meaning of the Fourth Amendment. The operator of a toll road has the right to set reasonable terms and conditions for its use. *Miami Bridge Co. v. Miami Beach Ry. Co.*, 12 So. 2d 438, 445 (Fla. 1943). Every vehicle may be required to stop to pay a toll. *Carson v. Commonwealth*, 404 S.E. 2d 919, 920 (Va. Ct. App. 1991) (Fourth Amendment not triggered by tollbooth stop, even if officer is present).

The Chandlers contend, however, that the delay in their "release" occasioned by the toll booth operator's completion of the Bill Detection Report was a "detention" and, therefore, a Fourth Amendment "seizure." To the extent that this allegation is meant to state the legal conclusion that a constitutional violation occurred, it is not binding upon us. *See Iqbal*, 556 U.S. at 678. It is we who must decide if the factual allegations of delay rise to the level of a Fourth Amendment seizure. *See id.*

The Chandlers' assertions of delay in their release from the toll booth are insufficient to allege a Fourth Amendment seizure. There are no allegations in the complaint that allow us to conclude that the Chandlers were "forced" to submit to the allegedly unconstitutional delay. They do not allege that they were forced to drive on the turnpike. They chose to drive on the turnpike. They do not allege that they had no notice they would have to stop at toll booths and pay tolls. In

9

choosing to drive on a toll road, they implicitly consented to stopping at toll booths (which stops they concede are not unconstitutional detentions) and paying tolls to enjoy the privilege of using the toll road.

The Chandlers have not alleged that they were forced to pay their tolls with large-denomination bills, thereby subjecting themselves to whatever delay was caused by completion of the Bill Detection Report. They *chose* to pay their toll with large-denomination bills. Nor have they alleged that they asked to withdraw the large report-triggering bill in favor of a smaller delay-free bill and were denied that opportunity.

Ultimately, the Chandlers merely allege that their choice to pay their toll with a large-denomination bill occasioned an unspecified delay in their ability to proceed through the toll booth. The delay was caused by the toll booth operator's completion of the Bill Detection Report. The claim that this delay is an unconstitutional detention is predicated upon the Chandlers' assumption that they have an absolute right to immediately proceed through the toll booth upon tendering the toll in any denomination. This assumption is unfounded.

The FDOT, as proprietor of a roadway that individuals have no right to enter without paying, may set lawful conditions on the forms of payments it

accepts.[4] *See generally* Fla. Stat. § 338.155(1)(2011) ("The [FDOT] is authorized to adopt rules relating to the payment, collection, and enforcement of tolls . . . ."). The FDOT has chosen to condition its acceptance of toll payment by large bills upon the completion of the Bill Detection Report. The Chandlers have cited no authority, and we are aware of none, that would allow their desire to pay with a large bill without having to wait upon the completion of the report to trump the FDOT's condition for accepting this form of payment.

Indeed, at oral argument the Chandlers' counsel acknowledged that the FDOT may also condition its acceptance of payment upon the motorist's having the exact change, thereby disallowing payment by large bills altogether. Payment with a large-denomination bill and compliance with the Bill Detection Report procedure is an alternative that motorists are free to accept or refuse. If motorists do not choose to subject themselves to this alternative, they are free to pay with a smaller bill and avoid the Bill Detection Report and its concomitant delay.

Furthermore, the Chandlers retained other alternatives to payment with a large bill that would have relieved them of the burden of delay. As with other

---

[4]As already noted, the Chandlers have not alleged that the delay-causing Bill Detection Report is unconstitutional based on a lack of notice of FDOT's toll payment conditions. In any event, there is no constitutional requirement with which we are familiar that would require the FDOT physically to display each of its toll conditions ahead of the tollbooth threshold.

11

drivers who arrive at tollbooths but are unwilling or unable to pay the toll, the Chandlers were free to retrieve their large denomination bill and exit the Turnpike immediately. They have not alleged that they requested such recourse and were denied it.

In sum, the Chandlers chose to enter the turnpike. They consented to pay whatever the toll was. They had no legal right to pay this toll however they pleased and immediately enter the turnpike. They chose to pay the toll by tendering a large-denomination bill. They implicitly consented to the delay caused by tendering payment in this way.

The Chandlers cannot transform what is basically FDOT's unremarkable condition for acceptance of a toll payment by a large-denomination bill into a constitutional violation by conclusorily labeling it "unlawful" and referring to it as a "seizure." In short, the Chandlers have not plead facts under which there is "more than a sheer possibility that [the defendants] acted unlawfully." *See Iqbal*, 556 U.S. at 678. We conclude, therefore, that the factual allegations in the complaint are inadequate to state a plausible claim of seizure under the Fourth Amendment.[5]

---

[5]No class was ever certified in this action. The allegation that "upon information and belief" some other drivers, not the Chandlers, may have been threatened with arrest or asked to provide "driver's license" information, is insufficient to state a claim that is plausible on its face

### III.

For the foregoing reasons, we hold that the complaint allegations do not state a constitutional violation.  The defendants are entitled to qualified immunity in this action.   The summary judgment of the district court denying qualified immunity to the defendants is

REVERSED and REMANDED WITH INSTRUCTIONS TO DISMISS.

---

as to the Chandlers, which is what they must do to escape dismissal.  *See Twombly*, 550 U.S. at 570.  The Chandlers cannot rely on an allegation that others' rights were violated to establish their own constitutional injury.  *See Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982).

MARTIN, Circuit Judge, concurring in the result.

I agree that Mr. and Mrs. Chandler failed to plead facts sufficient to allege a seizure under the Fourth Amendment to the Constitution.  I therefore concur in the result reached by my esteemed colleagues.