Timothy C. Batten, Sr., United States District Judge
This case comes before the Court on Defendant Rite Aid of Georgia, Inc.'s motion [6] to dismiss.
I. Background[1]
In June 2016, Donald Coleman began receiving pre-recorded automated voice messages from Rite Aid regarding prescription medications on his cell phone. These messages were directed to someone *1345 other than Coleman. After several phone calls, Coleman contacted a Rite Aid employee at the number from which the calls originated. Coleman informed the employee that the messages were reaching the wrong person and he wanted them to stop. Nevertheless, Coleman continued receiving prerecorded automated calls from Rite Aid.
On March 14, 2017, Coleman filed suit against Rite Aid asserting three claims. On May 1, Rite Aid filed a motion [6] to dismiss under Federal Rule of Civil Procedure 12(b)(6). On May 15, Coleman amended his complaint dismissing all claims except one: Rite Aid's violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[2]
II. Legal Standard
To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; see also Chandler v. Sec'y of Fla. Dep't of Transp. , 695 F.3d 1194, 1199 (11th Cir. 2012). The Supreme Court has explained this standard as follows:
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted); see also Resnick v. AvMed, Inc. , 693 F.3d 1317, 1324-25 (11th Cir. 2012).
Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level ...." Twombly , 550 U.S. at 555-56, 127 S.Ct. 1955 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id at 555, 127 S.Ct. 1955 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell , 643 F.3d at 1302, the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, Iqbal , 556 U.S. at 678, 129 S.Ct. 1937.
III. Discussion
A. TCPA Violation
Congress passed the TCPA to restrict the use of automated telephone systems, requiring the calling party to first obtain consent from the party being called. See 47 U.S.C. § 227. The Federal Communications Commission ("FCC") was authorized by Congress to "prescribe regulations to implement the [TCPA's] requirements" subject to various conditions. Id. § 227(b)(2).
Coleman must establish three elements to state a claim for a violation of the TCPA: (1) the defendant called a cellular phone, (2) using an automated telephone dialing system or prerecorded message or artificial voice, (3) without the recipient's prior consent.
*1346 Augustin v. Santander Consumer USA, Inc. , 43 F.Supp.3d 1251, 1253 (M.D. Fla. 2012). Rite Aid does not assert that Coleman's claim fails to meet any of these elements. Instead, Rite Aid argues that the case should be dismissed because two exceptions to the TCPA apply.
Rite Aid argues that the calls at issue are subject to either the exception for calls made for emergency purposes or the exception for calls made for health care purposes. See 47 U.S.C § 227(b)(1)(A) ; 47 C.F.R. § 64.1200(a)(2).
B. Emergency Purposes Exception
Rite Aid asserts that the calls in question were made for an emergency purpose. Under 47 U.S.C. § 227(b)(1)(A), calls made for "emergency purposes" are statutorily exempt from liability under the TCPA. The FCC defines "emergency purposes" as "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4). Rite Aid argues that the automated calls to Coleman were made for an emergency purpose because they related to prescription notifications for a Rite Aid customer.
To support its defense, Rite Aid relies upon Roberts v. Medco Health Solutions , No. 4:15-cv-1368-CDP, 2016 WL 3997071 (E.D. Mo. July 26, 2016). Roberts , 2016 WL 3997071, at *8, held that calls relating to confirmations or refills of prescription medication orders, when the caller did not know it was calling the wrong person, fall under the emergency purpose exception because "a patient's ability to timely receive a prescribed medicine is critical in preventing a major health emergency." The Court is not convinced, however, that the issue here is the same as the issue in Roberts.
In Roberts , the plaintiff's number previously belonged to a customer of the defendant-company that placed the offending calls. It is unclear in Roberts whether the plaintiff ever informed the company that it was calling the wrong number, or asked for the calls to stop. Contrastingly, Coleman made Rite Aid aware that the calls were placed to the wrong person and regarded medication that was not his, yet Rite Aid continued calling.
Rite Aid states that Coleman does not "allege that he requested that the calls stop." [12] at 5. However, Coleman alleges in his complaint that he "told Defendant's pharmacy employee that the wrong person was being called," [1] ¶ 12, "told the Defendant's pharmacy employee that he did not know the person to whom the messages were directed," id. ¶ 13, and "requested Defendant stop the calls to his cellular phone," id. ¶ 14. Accepting Coleman's allegations as true, Rite Aid was informed that Coleman no longer wished to receive calls. This differs materially from the situation in Roberts and therefore compels a different conclusion.
Coleman's claims align more closely with those in St. Clair v. CVS Pharmacy, Inc. , 222 F.Supp.3d 779 (N.D. Cal. 2016). St. Clair held that "[c]ontinuing to call a customer (or former customer) about a prescription, when the customer has made clear that he does not want or need the calls, does not fall within the definition of an 'emergency' purpose." Id. at 780. The same logic applies with even greater force when a non-customer makes a similar request.
If accepted, Rite Aid's argument would give carte blanche under the TCPA to companies that make automated calls related to prescription notifications. As noted by the court in St. Clair , this outcome is inconsistent with the development of TCPA regulations and the emergency purpose exception generally: to prevent unwanted automated calls.
With no controlling case law in our circuit, but mindful of how other courts have dealt with this issue, the Court holds that the emergency purposes exception to the *1347 TCPA does not apply to calls made after Coleman told Rite Aid to stop calling him. Thus, dismissal is not warranted on this ground.
C. Health Care Exceptions to the TCPA
In addition to the statutory exceptions to the TCPA (emergency purposes and prior express consent), the FCC has promulgated exceptions to the TCPA for certain calls related to health care.
Notwithstanding the volume of ink spilled on this regulatory crusade, there is a remarkable lack of clarity regarding the extent to which calls ordinarily subject to the TCPA are exempted because they are health care related.[3] The Court examines the tangled regulatory framework that Rite Aid argues requires dismissal because the calls it made to Coleman are related to health care.
1. The Health Care Rule
First, there is the Health Care Rule. This rule was codified after the FCC issued an order in 2012 "tightening the restrictions for automated telemarketing calls under the TCPA ...." Jackson v. Safeway, Inc. , No. 15-cv-4419-JSC, 2016 WL 5907917, at *3 (N.D. Cal. Oct. 11, 2016). The FCC heightened the consent requirement for certain automated telemarketing calls, requiring a TCPA caller to obtain prior express written consent, as opposed to the statutorily required prior express consent. See id. (citing In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991 , 27 FCC Rcd. 1830, 1838 ¶ 20 (Feb. 5 2012) (hereinafter " 2012 TCPA Order ")). It was in this heightened-consent-requirement order that the FCC created the Health Care Rule.
The Health Care Rule is codified at 47 C.F.R. § 64.1200(a)(2) :
No person or entity may: ... Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers [listed, including cellular telephone lines], other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associates,' as those terms are defined [by HIPAA].
47 C.F.R. § 64.1200(a)(2).
Many courts have found that this provision provides an exemption only from the requirement of prior express written consent, rather than a wholesale exemption from any consent requirement. See Latner v. Mount Sinai Health Sys., Inc. , No. 17-99-cv, 879 F.3d 52, 54-55, 2018 WL 265085, at *2 (2d Cir. Jan. 3, revised Jan. 9, 2018) (finding that the "FCC exempts from written consent calls to wireless cell numbers if the call 'delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those are defined in the HIPAA Privacy Rule.' " (quoting 47 C.F.R. § 64.1200(a)(2) )); Zani v. Rite Aid Headquarters Corp. , 246 F.Supp.3d 835, 845-46 (S.D.N.Y. 2017) (same); Sullivan v. All Web Leads, Inc. , No. 17-C-1307, 2017 WL 2378079, at *3 (N.D. Ill. June 1, 2017) ("Despite some ambiguity in the wording of this 'health care rule' ..., the FCC has clarified that such calls are exempted only from the *1348 written consent requirement." (citing Consumer & Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling & Exemption from Am. Ass'n of Healthcare Admin. Mgmt. , 29 FCC Rcd. 15267, 15267 n.7 (Dec. 17, 2014), 2014 WL 7188888 (hereinafter " 2014 FCC Public Notice "))).
Most of the cited authority concludes that the Health Care Rule still requires prior express consent based on the FCC's own interpretation of the Health Care Rule. The FCC has at least twice indicated that this is the case. In 2014, the FCC stated that HIPAA-covered calls (i.e., those that deliver a health care message) "to a wireless number are exempt from the written consent requirement" and that "[t]hese calls are still covered by the general consent requirement in [ 47 C.F.R. §] 64.1200(a)(1)." 2014 FCC Public Notice , 29 FCC Rcd. at 15267 n.7 (citation omitted).
In 2015, the FCC reiterated this, stating that "HIPAA-covered autodialed, prerecorded voice, and artificial voice calls to a wireless number are exempt from the TCPA's written consent requirement but are still covered by the general consent requirement." 2015 TCPA Order , 30 FCC Rcd. at 8030 n.481. Thus, the FCC's own interpretation of its regulation supports the notion that even under the Health Care Rule, prior express consent is still required.
Even so, at least one other Court has held (in dicta) just the opposite. See Jackson , 2016 WL 5907917, at *7 n.10 ("Under the plain language of [the Health Care Rule], it appears that 'a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate" ' is not subject to any consent requirement, written or otherwise.' " (quoting 47 C.F.R. § 64.1200(a)(2) )).
This raises the question of whether the language of the regulation containing the Health Care Rule is ambiguous such that deference to the FCC's interpretation is warranted under Auer v. Robbins , 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). See Zhou Hua Zhu v. United States Attorney Gen. , 703 F.3d 1303, 1309 (11th Cir. 2013) (" 'Auer deference is warranted only when the language of the regulation is ambiguous ...." (citation omitted) (quoting Christensen v. Harris Cty. , 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) )).
As long as the interpretation adopted by the FCC is not "plainly erroneous or inconsistent with the regulation," the Court will accept the agency's interpretation. Auer , 519 U.S. at 456, 117 S.Ct. 905 (quoting Robertson v. Methow Valley Citizens Council , 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989) ).
The Court finds the Health Care Rule ambiguous and thus will apply Auer deference. It is unclear from the structure of the regulation whether the clause providing the exception for "a call that delivers a 'health care' message" relates, for purposes of the exception, to the "prior express consent" in the clause before it, or if it starts a new clause entirely exempting the health care category of calls from any consent requirement. According to the FCC, it is the latter.
This ambiguity is at least manifested in, though not predicated upon, the decisions cited in this Order, which have arrived at opposite conclusions regarding the level of consent, if any, required for health care-related calls.
Accordingly, the Court defers to the FCC's interpretation that calls excepted by the Health Care Rule require prior express consent.[4] Because Coleman avers *1349 that he did not provide any consent to the calls made by Rite Aid, the Health Care Rule does not apply, and dismissal is not warranted on this ground.
2. The "Health Care Treatment" Exception
In addition to the Health Care Rule, the FCC has provided an additional exception to the TCPA affecting health care-related calls. Section (b)(2)(C) of the TCPA provides that the FCC "may, by rule or order, exempt from the [restrictions on automated or prerecorded calls made to, inter alia, cell phones] that are not charged to the called party, subject to such conditions as the [FCC] may prescribe as necessary in the interest of the privacy rights [the TCPA] is intended to protect." 47 U.S.C. § 227(b)(2)(C). Thus, the TCPA permits the FCC to create regulatory exceptions to TCPA liability, subject to certain exceptions.
In 2015, the FCC conducted a " section 227(b)(2)(C) inquiry"-i.e., determined whether it would or could create a regulatory exception to the TCPA-when it granted an exemption requested by the American Association of Healthcare Administrative Management ("AAHAM"). 2015 TCPA Order , 30 FCC Rcd. at 8030. Among other things, AAHAM asked the FCC "to exempt from the TCPA's prior-express-consent requirement certain non-telemarketing, healthcare calls that are not charged to the called party." Id.
The FCC responded: "We grant the exemption [requested by AAHAM], with [certain] conditions ..., but restrict it to calls for which there is exigency and that have a healthcare treatment purpose ...." Id. at 8031. Relevant to this case, the FCC made it clear that this included "prescription notifications." Id. The Court refers to this as the Health Care Treatment Exception. Accord Latner , 879 F.3d at 55 n. 2, 2018 WL 265085, at *2 n.2.
This "healthcare treatment purpose" standard is the hallmark of this regulatory exception. Id. The FCC clarified that this exclusion did not include calls containing "telemarketing, solicitation, or advertising content, or which include accounting, billing, debt-collection, or other financial content." Id. at 8031. For purposes of this exception, TCPA calls were divided into two categories: telemarketing calls and health care exigency calls. The latter would be, according to the FCC's order, exempted from the prior express consent requirement as requested by the petitioner, AAHAM.
It is clear that the Health Care Treatment Exception "went further than the Health Care Rule." Zani , 246 F.Supp.3d at 846. This is because the FCC order purports to grant an exemption for certain health care-related calls from TCPA consent requirements altogether.
But some clarity is still wanting. In a footnote to the 2015 TCPA Order , the FCC commented that "HIPAA-covered autodialed, prerecorded voice, and artificial voice calls to a wireless number are exempt from the TCPA's written consent requirement but are still covered by the general consent requirement." 30 FCC Rcd. at 8030 n.481 (citing 47 C.F.R. § 64.1200(a)(1)-(2) ). And yet, the FCC-in the same order-purported to grant an exemption from any consent requirement for "calls subject to HIPAA" that do not contain certain commercial/telemarketing content and which met other conditions. Id. at 8031. The tension is manifest; and it is unclear exactly what level of consent is now required for health care-related calls.
Because this issue is not fully briefed, and there are other grounds for its decision, the Court declines to delve further into the regulatory morass at this time. But the identified tension could present an issue in future stages of the litigation.
*1350 Rite Aid cannot take shelter under the Health Care Treatment Exception-whether or not it is a complete exemption to the TCPA-because it fails to satisfy the prerequisites to the exceptions operation. To meet the exception,[5] a "healthcare provider must honor ... opt-out requests immediately." Id. at 8032. But Coleman avers that Rite Aid continued the offending calls after Coleman requested that they stop. Rite Aid therefore cannot utilize the exception on this ground.
Rite Aid also falls short of another prerequisite according to Coleman's averments. The Health Care Treatment Exception requires that "a healthcare provider ... offer recipients within each message an easy means to opt out of future such messages ...." Id. Coleman avers that Rite Aid did not provide an appropriate opt out mechanism in the offending calls.
As a result Rite Aid's calls do not meet the prerequisites to the Health Care Treatment Exception.
IV. Conclusion
For the foregoing reasons, Rite Aid's motion [6] to dismiss for failure to state a claim is denied. Rite Aid is directed to file an Answer within twenty-one days of this Order.
IT IS SO ORDERED this 10th day of January, 2018.

For purposes of this Order regarding a motion to dismiss, well-pleaded allegations are accepted as true and viewed in the light most favorable to the non-moving party. Powell v. Thomas , 643 F.3d 1300, 1302 (11th Cir. 2011).

In Coleman's May 15 amendment dismissing two of his claims, he named the wrong party in the case caption. On June 20, Coleman filed another amendment correcting this error. It is clear to the Court that Coleman intended the dismissal of the claims to relate to Rite Aid, and that he clarified the error in a timely manner, resulting in no detriment to either party. Because his claims were dismissed and are no longer live, the Court need not address any of Rite Aid's arguments in its motion to dismiss regarding the dismissed claims.

The Court uses the phrase "health care related" for convenience, and to distinguish from the regulatory terms of art "health care message" and "health care treatment purpose."

The parties do not dispute that Rite Aid's calls conveyed a health care message; accordingly, the Court assumes without deciding that this is the case.

The Court assumes without deciding that Rite Aid's calls were made for a health care treatment purpose.