Timothy C. Batten, Sr., United States District Judge
This case comes before the Court on Defendants John Does' motion [33] to dismiss for failure to state a claim and first motion [41] for sanctions. Also before the Court is Plaintiff Dar Thompson's motion [47] to strike Defendants' reply brief [46] in support of their motion for sanctions.
I. Background[1]
Thompson filed this suit under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), against five anonymous Defendants. He alleges that Defendants have unlawfully registered a domain name that infringes upon the putative trademark "dar4ptc." This stands for "Dar for Peachtree City," using the common acronym for Peachtree City, Georgia, PTC, in combination with Thompson's first name, Dar. Thompson argues that he owns a trademark in this phrase.
As a candidate for mayor of Peachtree City, Georgia, Thompson and his campaign committee settled upon "dar4ptc" as the slogan for his campaign and domain website. But when Thompson attempted to *1324 purchase the domain name through GoDaddy.com, it was unavailable. Thompson avers that whoever registered the domain name did so without a legitimate purpose, in violation of the ACPA. Because the registrant of "dar4ptc.om" is unknown to him, Thompson initiated this lawsuit against the registrant and other alleged wrongdoers under the pseudonym of "John Does."
On February 8, 2018, the Court quashed [16] a subpoena issued by Thompson on non-party GoDaddy.com because Thompson failed to demonstrate entitlement to premature discovery; he had not made a threshold showing of entitlement to relief under the trademark laws.
On February 22, Thompson filed an amended complaint [17] and a second motion [18] for early discovery. On May 8, the Court denied [20] Thompson's motion because he once again failed to state a claim. The Court further ordered Thompson to show cause as to why the case should not be dismissed for failure to state a claim.
In response, Thompson filed a motion [22] for leave to amend, which the Court granted [27]. The second amended complaint [28] then became the operative pleading.
Defendants now move to dismiss this complaint. On February 11, 2019, the Court held a hearing on the motion. All motions are now ripe for disposition.
II. Legal Standard
Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Chaparro v. Carnival Corp. , 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Chandler v. Sec'y of Fla. Dep't of Transp. , 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting id. ). The Supreme Court has explained this standard as follows:
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted) (quoting Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ); see also Resnick v. AvMed, Inc. , 693 F.3d 1317, 1324-25 (11th Cir. 2012).
Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level ...." Twombly , 550 U.S. at 555-56, 127 S.Ct. 1955 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 555, 127 S.Ct. 1955 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas , 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, Iqbal , 556 U.S. at 678, 129 S.Ct. 1937.
Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are *1325 well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
III. Discussion
This is the third time the Court has reviewed the merits of Thompson's pleadings. Though this analysis has not yet been done in the context of a motion to dismiss, the Court's ruling on Thompson's motion to amend, granting amendment, was the functional equivalent.[2] The Court held that Thompson's proposed amendment would not be futile because it would survive a motion to dismiss. However, in the interim both sides obtained new counsel. In addition to challenging the merits of the second amended complaint, Defendants also contend that the Court erred in a previous conclusion of fact relating to the usage of Thompson's putative trademark.
In light of this procedural background, the Court's review of the merits of Thompson's second amended complaint is plenary and considered in light of the arguments now raised in Defendants' motion to dismiss.
Defendants also seek sanctions against Thompson (and his counsel) for alleged factual misrepresentations made to the Court. Thompson also seeks to strike Defendants' reply brief. These motions are addressed following the motion to dismiss.
A. Defendants' Motion to Dismiss
To establish a prima facie claim under the ACPA, Thompson must demonstrate that (1) Defendants have registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a mark owned by Thompson; (3) the mark was distinctive at the time Defendants registered the domain name; and (4) Defendants committed the alleged infringement with a bad-faith intent to profit from Thompson's mark. Direct Niche, LLC v. Via Varejo, S/A , No. 15-cv-62344-GAYLES, 2017 WL 5952896, at *5 (S.D. Fla. Aug. 10, 2017) ; 5 J. THOMAS MCCARTHY , MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:50 (5th ed. Sept. 2017 update).
The ACPA requires that a plaintiff plead and prove a valid trademark in order to state a claim. See 15 U.S.C. § 1127 (defining "mark" as "any trademark, service mark, collective mark, or certification mark."); Retail Servs., Inc. v. Freebies Publ'g , 364 F.3d 535, 549 (4th Cir. 2004), abrogated on other grounds by Verisign, Inc. v. XYZ.com, LLC , 891 F.3d 481, 488 (4th Cir. 2018) (concluding that one "cannot state a claim under the ACPA without a valid trademark").
Defendants do not appear to challenge Thompson's ownership of a valid trademark at the time of filing. Rather, they argue that the ACPA requires use (a necessity for ownership of a common law trademark) of a valid trademark at the time of the alleged infringement , i.e., when Defendants registered the offending domain.
Thompson responds by asserting that the text of the ACPA does not require that he show use at the time of registration; rather, the only thing that he must show is that the mark was distinctive at the time of registration. His argument is based on the text of the ACPA, which protects marks that are either distinctive "at the *1326 time of registration," 15 U.S.C. § 1125(d)(1)(A)(i)(I), or "famous at the time of registration," id. § 1125(d)(1)(A)(ii)(II). Thompson correctly points out that the statute does not on its face require use at the time of registration. But that, unfortunately, does not settle the matter.
A determination of what the ACPA requires "begins with the statutory text, and ends there as well if the text is unambiguous." BedRoc Ltd., LLC v. United States , 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004). As relevant to this case, the text of ACPA provides:
A person shall be liable in a civil action by the owner of a mark ... if ... that person ... uses a domain name that ... in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark ....
15 U.S.C. § 1125(d)(1)(A)(ii)(I).
Examining the plain text, there is no explicit use requirement related to the time of the domain registration. However, an obvious implication from the text of the statute is that there must be a "mark" capable of being distinctive at the time of registration. After all, it does not say "in the case of a phrase that is distinctive"; rather, the statute plainly contemplates that there be a mark. So then, what is a mark under the ACPA?
The ACPA defines a mark as including a trademark. 15 U.S.C. § 1127. A trademark is defined as "any word ... used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods ...." Id. § 1127. The phrase "used by a person" demonstrates two things. On a very simple level, it shows that the statute contemplates that the mark at issue in an ACPA action would, in fact, be used.
More importantly for purposes of this Court's analysis, it suggests that the ACPA is to be applied consistently with traditional principles of trademark law, and is not, as Thompson contends, a sui generis enactment. The Supreme Court has called "longstanding ... the principle that '[s]tatutes which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.' " United States v. Texas , 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993) (alterations in original) (quoting Isbrandtsen Co. v. Johnson , 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952) ). Nothing suggests that the ACPA imports any such congressional intent. Therefore, the Court relies on traditional trademark principles in its interpretation of the ACPA.[3]
Accordingly, the Court presumes that the ACPA operates consistently with the fundamental principle of trademark law that "[a]ctual substantive rights to a trademark arise based on its use in commerce and its distinctiveness." FN Herstal SA v. Clyde Armory Inc. , 838 F.3d 1071, 1080 (11th Cir. 2016) (alteration in original) (emphasis added) (quoting Knights Armament Co. v. Optical Sys. Tech., Inc. , 654 F.3d 1179, 1188 (11th Cir. 2011) ); see *1327 also Bos. Prof'l Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc. , 510 F.2d 1004, 1014 (5th Cir. 1975) ("A trademark is a property right which is acquired by use.").
The usage requirement for obtaining enforceable rights in a trademark is particularly salient in the context of a common law mark, which is what we have in this case. "Under the common law, trademark rights are appropriated only through actual prior use in commerce." Tally-Ho, Inc. v. Coast Cmty. Coll. Dist. , 889 F.2d 1018, 1022 (11th Cir. 1989).
As a result, the Court holds that at least with respect to a common law mark, the ACPA requires the existence of a mark at the time of registration, which can be established only through actual prior use in commerce. Thus, even if the phrase "dar4ptc" was inherently distinctive-as the Court previously concluded because it fit the parameters of a suggestive trademark, Two Pesos, Inc. v. Taco Cabana, Inc. , 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) -no actionable ACPA claim arises unless, at the time of registration, Thompson had an enforceable trademark right created by use.
Defendants are correct that Thompson has pled no use of the mark at or before the time Defendants registered the domain names on July 15, 2017. Previously, the Court found that Thompson's campaign was launched in July. This was erroneous.
Based on its erroneous conclusion, the Court concluded that "dar4ptc" would have been associated in the mind of the public with his campaign at the time Defendants registered the domains, giving him some potential trademark rights at the relevant time. But due to the Court's reevaluation of when Thompson launched his campaign, this conclusion no longer holds. Under the present averments, Thompson's use of the mark in a public manner did not occur until weeks after the domain was registered.
Thus, Thompson fails to state a claim for infringement of a "mark that is distinctive at the time of registration" because at that time there was no mark; that is, Thompson had not yet acquired enforceable rights to the putative common law mark "dar4ptc" through actual use in commerce. 15 U.S.C. § 1125(d)(1)(A)(ii)(I).
Even if the mark technically existed as a distinctive, but unused, mark at the time of registration, courts have recognized that "a trademark owner generally cannot sue for and recover damages for infringement that occurred prior to the owner acquiring the mark." Ricks v. BMEzine.com, LLC , 727 F.Supp.2d 936, 957 (D. Nev. 2010). In Ricks , the Court denied summary judgment due to an issue of fact "as to whether the LLC owned the ... mark at the time of any alleged [ACPA] infringement ...." Id. As the Court has explained already, without use of a common law mark Thompson would have no ownership of it.
True, Ricks dealt with the assignment of pre-existing trademark rights, whereas here "dar4ptc" was presumably a new trademark. But there is no legitimate distinction between these situations. The issues are the same: At the time of the alleged infringement, Thompson lacked a protectable interest in the mark because he had not yet appropriated the mark through use. It would defy principles of standing and causation for a trademark plaintiff to assert infringement of a trademark right that he did not have at the time the alleged infringement occurred simply because he later acquired the rights to the infringed mark.[4]
*1328 The Court takes solace in the fact that, though unfortunate, its conclusion is consistent with several well-settled principles of trademark law. First, the "basic rule of trademark law that a concept or an idea for a new trademark is not itself a 'trademark.' " MCCARTHY , supra p. 7, § 16:11. "[A] business plan or concept for a new trademark does not in itself establish protectable trademark rights." Id. Here, until Thompson used his mark, it was merely an idea, a concept, of a mark he had for his campaign. He had nothing to protect from anyone-including cybersquatters-at the time the infringement occurred.
The Court's conclusion is also consistent with the principle that standing to sue based on injury from alleged trademark infringement accrues to the owner of the mark at the time of infringement. Cf. Insect Sci. Res., LLC v. Timberline Fisheries Corp. , No. 1:07-cv-2662-JEC, 2010 WL 431233, at *5 (N.D. Ga. Feb. 4, 2010) ("[Plaintiff] did not own the ... mark at the time of infringement or any other time. Because plaintiff had never owned the mark, plaintiff could not have suffered a legally cognizable injury when the infringement occurred." (citation omitted)); cf. also Nutritech Sols., Ltd. v. Matrix Nutrition, LLC , No. cv 06-461-PHX-MHM, 2007 WL 1424337, at *5 (D. Ariz. May 11, 2007) ("[T]o sue for patent, and for argument's sake for a trademark violation, requires either (1) ownership of the patent or trademark at the time of the infringement or (2) subsequent ownership of the trademark and the assignment of claims of past infringement." (emphasis added)). Thus, where a trademark plaintiff, like Thompson, had no rights at the time of infringement, he generally lacks standing to bring suit.
It would be a strange result if, even accepting Thompson's argument that distinctiveness is all that must be shown at the time of infringement, he could predicate his infringement action on a time prior to his-or anyone's-appropriation of the "dar4ptc" mark. While it seems obvious that Defendants acted in bad faith by registering the domain and that they effectively "stole" Thompson's idea for his campaign, his remedy does not lie in trademark infringement because he lacked trademark rights at the relevant time.
Accordingly, the Court is compelled by the structure of the ACPA and the operating principles of trademark law to arrive at its conclusion, though it is satisfied that Defendants did something "wrong." Judicial intuitions, however, do not create a basis for sustaining a cause of action. And as this Court understands the statute, in the absence of evidence that Thompson used the mark at the time the domains were registered, he fails to state a claim.[5]
B. Defendants' Motion for Sanctions
Defendants also move for sanctions under 28 U.S.C. § 1927, contending that Thompson's counsel unreasonably multiplied this litigation by relying on and failing to disavow the Court's erroneous conclusion *1329 that Thompson had launched his mayoral campaign around the time the domains were registered. Thompson contests the motion.
Even if Does were correct about the alleged misconduct, the Court is not inclined to grant sanctions because the requisite causal connection between the alleged misconduct and the multiplication of these proceedings is absent. See Peterson v. BMI Refractories , 124 F.3d 1386, 1396 (11th Cir. 1997) ("In order for § 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings.").
The Court did not deny the motion for reconsideration, which kept this suit alive, based on the alleged misrepresentations of fact; it did so because Defendants' motion was procedurally improper. The hearing on the motion to dismiss was also granted at the Defendants' request-not Thompson's. While the issues may have been a little clearer a little sooner had Thompson or his counsel owned up to the factual mistake sooner, the Court did not rely on counsel's misstatement, nor does the Court find that it caused the proceedings to be multiplied. Rather, this effect was accomplished by the nature of the questions in this case and the procedural gymnastics bringing us to the present day. Accordingly, the motion will be denied.
C. Thompson's Motion to Strike
Thompson's motion to strike is denied. Even though it was late, Thompson was not prejudiced by a filing delay of less than one day.
IV. Conclusion
The Court grants Defendant's motion [33] to dismiss for failure to state a claim. The Court denies both Defendants' motion [41] for sanctions and Thompson's motion [47] to strike. The Clerk is directed to close the case.
IT IS SO ORDERED this 18th day of April, 2019.

At this stage the facts as averred in Thompson's second amended complaint [28] are assumed to be true.

Thompson contends that Defendants' present motion to dismiss is an improper successive motion because it duplicates the analysis conducted by the Court in the motions for early discovery, to quash, and to amend. However, this is the first motion to dismiss that has been filed. It is therefore not successive.

The Court also disagrees with Thompson's analogy to trademark applications based on an intent to use. This scheme "does not, by itself, confer any rights enforceable against others, [though] it does give an applicant the right to engage in the statutorily prescribed application procedure." Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc. , 525 F.3d 8, 18 (D.C. Cir. 2008). The Court holds that Thompson must demonstrate the use of a mark at the time the offending domains are registered in order to establish rights enforceable by the ACPA. The intent-to-use regime provides no such thing.

Of course, the assignment rights to a trademark can include pre-assignment infringement causes of action. But these "are disfavored, and they are allowed only when the right to sue is clearly spelled out in a valid assignment." H & J Foods, Inc. v. Reeder , 477 F.2d 1053, 1056 (9th Cir. 1973). Thompson's alleged trademark was not assigned to him. Further, the "dar4ptc" mark did not exist as a trademark prior to Thompson using it, which occurred after the infringement. Thus, there were no pre-existing rights that could have inhered when (if) he eventually acquired ownership of the mark through use.

The Court notes that if the Defendants re-registered the domains, to the extent that Thompson has rights in "dar4ptc" at that time, he may have a cause of action against them. See Jysk Bed'n Linen v. Dutta-Roy , 810 F.3d 767, 777 (11th Cir. 2015).