WILLIAM M. RAY, II, United States District Court Judge
This case comes before the Court on Defendants' respective Motions to Dismiss [Docs. 225, 226, 227, 228, 229, 232, and 233]. Upon consideration of the arguments presented by the parties, the applicable law, and all appropriate matters of record, the Court finds and rules as follows.
I. BACKGROUND
In its Second Amended Complaint [Doc. 223], the Federal Trade Commission ("FTC") brings suit against three categories[1] of defendants:
1. Hornbeam Parties -Hornbeam Special Situations, LLC; Cardinal Points Holdings, LLC; Cardinal Points Management, LLC d/b/a Clear Compass Digital Group; and Gyroscope Management Holdings, LLC (corporate entities together, the "Hornbeam Entities"); and individual Defendants Patricia Robinson, as Executor for the estate of Jerry L. Robinson, Earl G. Robinson, Mark Ward, and James McCarter.
2. EDP Parties -EDebitPay, LLC; Platinum Online Group, LLC d/b/a Premier Membership Clubs; and clickXchange Media (corporate entities *1221 together, the "EDP Entities"). Also included are individual Defendants Dale Paul Cleveland and William R. Wilson.[2]
3. iStream Parties -iStream Financial Services, Inc., along with Kris Axberg and Richard Joachim.
In its Complaint, the FTC alleges violations of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8401 et seq. , and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 - 6108 [Doc. 223 ¶ 1]. The Complaint describes a scheme by which Defendants acquired the financial information of subprime customers and made unauthorized debits to their bank accounts to pay for online coupons that went largely unused [Doc. 223 ¶ 43-45]. The EDP Parties operated this scheme from July 2010 to September 2013 [Doc. 223 ¶ 25] before selling the operation to the Hornbeam parties, which operated the scheme until June 2016 [Doc. 223 ¶ 32-33]. Throughout this time, the iStream Parties played an essential role in the scheme, providing payment processing to the other Defendants despite knowing about high return rates for electronic checks and frequent customer complaints [Doc. 223 ¶ 83-99].
In its Complaint, FTC alleges facts and circumstances which demonstrate the ongoing nature of Defendants' activities. Prior to this current action, the EDP Parties had been under FTC scrutiny in another matter. After resolving the conflict with a stipulated order, the EDP Parties were held in contempt after the court found they violated the order and continued the illegal activity from at least the day of the order [Doc. 223 ¶¶ 50-53]. Similarly, the EDP Parties settled investigations into their scheme from the states of Oregon and Iowa [Doc. 223 ¶¶ 142-43, 148, 186], yet continued to operate the scheme. After selling the operation to the Hornbeam Parties, Wilson formed a new company, AdMediary, LLC, which began targeting the financial information of subprime customers and recruiting employees from the EDP Parties and Hornbeam Parties [Doc. 223. ¶¶ 194-99, 265].
Likewise, after purchasing the operation with full knowledge of its practices and the legal scrutiny that it was under, the Hornbeam Parties continued to operate the scheme and worked to prolong it [Doc. 223 ¶¶ 225-25, 234-37, 310]. They made fake transactions to mask high return rates, sought a new processing bank, and only stopped the scheme when their replacement bank stopped cooperating [Doc. 223 ¶¶ 344-45].
Finally, the iStream Parties continued working with the EDP Parties and Hornbeam Parties despite knowing about the high return rates [Doc. 223 ¶¶ 109, 243, 467-80] and the legal scrutiny [Doc. 223¶¶ 476-77, 480]. They helped the Hornbeam Parties find a new processing bank and maintain its relationship with the main processing bank, and they approved accounts the Hornbeam Parties used to mask high return rates [Doc. 223 ¶¶ 579-83]. Additionally, iStream continues to provide payment processing services to a variety of customers [Doc. 223 ¶ 594].
II. LEGAL STANDARD
Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not *1222 require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
Rule 12(b)(6) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has defined the standard, explaining:
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.
Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955 ). Therefore, the claim can only survive a motion to dismiss if the complaint's factual allegations are "enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555, 127 S.Ct. 1955. "[A] formulaic recitation of the elements of a cause of action will not do." Id.
After eliminating allegations in the pleading that are merely legal conclusions, the Court must examine the well-pleaded factual allegations and assume their veracity when determining whether those facts plausibly give rise to an entitlement to relief. Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.
III. DISCUSSION
Defendants generally argue that the FTC has failed to allege facts sufficient to allow the FTC to sue under 15 U.S.C. § 53(b). The Court does not agree.
Under 15 U.S.C. § 53(b), the FTC is authorized to bring suit in a district court to obtain a preliminary injunction "[w]henever the [FTC] has reason to believe ... that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the [FTC]." Defendants argue that the FTC only alleges past misconduct rather than showing they are "about to violate" the law and, therefore, that the FTC has failed to state a claim under § 53(b). In response, the FTC argues that there is an "internal standard" component to § 53(b), emphasizing the "whenever the Commission has reason to believe" language of the statute. Additionally, the FTC contends that its factual allegations are sufficient to show that Defendants are about to violate the law if not for government intervention.
The Third Circuit has recently addressed the pleading requirement under § 53(b) at the motion to dismiss stage. In FTC v. Shire ViroPharma, Inc., 917 F.3d 147 (3d Cir. 2019), the Court of Appeals for the Third Circuit held that the FTC must plead facts showing a current or impending violation of the law to survive a motion to dismiss on a § 53(b) claim. "We conclude that this language is unambiguous; it prohibits existing or impending conduct. Simply put, [ § 53(b) ] does not permit the FTC to bring a claim based on long-past conduct without some evidence that the defendant 'is' committing or 'is about to' commit another violation." Id. at 156. The Court of Appeals "reject[ed] the FTC's contention that [ § 53(b) ] ... can be satisfied by showing a violation in the distant past and a vague and generalized likelihood of recurrent conduct.... [T]he FTC must make a showing that a defendant *1223 is violating or is about to violate the law." Id. at 159.
Defendants argue that the decision in Shire ViroPharma supports dismissal of the FTC's § 53(b) claim in this case. However, the Third Circuit did not address the merits of the FTC's internal standard argument. "The FTC also asserts that [ § 53(b) ]'s 'reason to believe' language confers upon it unreviewable discretion to file suit.... We decline to consider this argument because the FTC failed to raise it in the District Court." Id. at 159, n.17. Although the Third Circuit went on to doubt the persuasiveness of the argument because there was "no evidence to support the FTC's 'reason to believe' [defendant] is violating or about to violate the law," id., the differing circumstances of the instant case lead this Court to a different conclusion. Here, the FTC has raised the internal standard argument, and the Court finds it persuasive because the FTC has pled at least some facts to show that it had "reason to believe" that Defendants were "about to violate" the law.
In Shire ViroPharma, the Third Circuit emphasized the "about to violate" language of § 53(b) when rendering its opinion, finding that this language is unambiguous, Id. at 156, and that "[the statute] means what it says." Id. at 159. Here, this Court shall take the same approach in addressing the FTC's internal standard argument.
15 U.S.C. § 53(b) specifically provides that the FTC may bring suit in a district court "[w]henever the Commission has reason to believe " the law is about to be violated. (Emphasis added). The standard established in § 53(b) is not necessarily an objective one. If there was some information to suggest that the FTC's motive for filing suit was merely vindictive, or if the Complaint did not contain any factual allegations from which to infer that the law was about to be violated, then the FTC would clearly lack a "reason to believe" and dismissal would be proper. Here, however, the FTC has alleged facts about past bad behavior which includes a pattern of reoccurrence. Thus, the Complaint sets forth at least some facts to support a reasonable inference that the behavior will reoccur in the future in the absence of preliminary injunctive relief. At this stage of the litigation, the FTC has pled sufficient facts to state a plausible claim under § 53(b) and to survive the Defendants' Rule 12(b)(6) motions.
IV. CONCLUSION
For the above reasons, it is hereby ORDERED that Defendants' respective Motions to Dismiss [Docs. 225, 226, 227, 228, 229, 232, and 233] are DENIED .
V. CERTIFICATION OF INTERLOCUTORY APPEAL
Under 28 U.S.C. § 1292(b), the Court of Appeals has discretion to permit an interlocutory appeal when the district court is "of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation...." In general, an appeal under § 1292(b) is appropriate when the issues presented on appeal involve:
(1) pure questions of law, (2) which are controlling of at least a substantial part of the case, (3) and which are specified by the district court in its order, (4) and about which there are substantial grounds for difference of opinion, (5) and whose resolution may well substantially reduce the amount of litigation necessary on remand.
McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1264 (11th Cir. 2004). The Court concludes that this is such an order.
*1224 As set forth above, the Order involves questions of law, including the Court's holding that the FTC satisfied its obligation under Fed. R. Civ. P. 8(a) to plead sufficient allegations regarding its reason to believe Defendants were violating or about to violate FTC-enforced laws at the time of filling.
There are substantial grounds for disagreement with regard to the issues underlying the determination, as highlighted by this Court's Order, including the oral findings made at the hearings on these motions; a prior Opinion in this matter, FTC v. Hornbeam, Case No. 1:17-cv-03094-WMR, Doc. No. 219 (Batten, J.); Standard Oil Co. of Cal. v. FTC, 596 F.2d 1381 (9th Cir. 1979) ; FTC v. Shire ViroPharma Inc., 917 F.3d 147 (3d Cir. 2019) ; and FTC v. Nat'l Urological Grp., Inc., No. 1:04-cv-3294-CAP, 2006 WL 8431977 (N.D. Ga. Jan. 9, 2006). The Court further concludes that guidance from the United States Court of Appeals for the Eleventh Circuit regarding these issues will materially aid in the proper disposition of this case and that an immediate appeal from this Order is appropriate.
Accordingly, the Court GRANTS Defendants' request for leave to file an interlocutory appeal. Pursuant to 28 U.S.C. § 1292(b), the parties shall have ten days from the date entry below to file an application for immediate review.
Finally, the Court finds that it in the interest of justice that the case is STAYED pending the completion of appellate proceedings.
IT IS SO ORDERED, this 24th day of July, 2019.

These are for organizational purposes only and reflect the usage of the parties in their briefing. The groupings do not reflect upon whether the Defendants are jointly or individually represented by counsel, presenting a common defense, or liable in common for the alleged violations.

Defendant Keith Merrill was also among the EDP Parties, but the claims against him have been resolved by a Stipulated Order [Doc. 105].