[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12154

_____

D.C. Docket No. 3:13-cv-00069-CDL


RACHEL PARKS,
on behalf of D.P.,

                                                            Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(April 20, 2015)

Before TJOFLAT, WILLIAM PRYOR, and BALDOCK,* Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal presents two questions about Rachel Parks's application for

supplemental security income on behalf of her minor son, D.P.: (1) whether the

_____

* Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by
designation.

administrative law judge's denial of Parks's application was supported by substantial evidence; and (2) whether the Social Security Appeals Council must make explicit findings of fact about new evidence that it adds to the record when it denies review. D.P. suffers from attention deficit hyperactivity disorder and borderline intellectual functioning. An administrative law judge denied Parks's application because D.P. did not suffer from a condition that entitled him to supplemental security income. Parks filed a request for review with the Appeals Council, and she submitted new evidence of D.P.'s academic struggles. The Appeals Council supplemented the record with the new evidence, but denied review. Parks then filed a complaint in the district court, which affirmed the denial of her application. Because the administrative law judge's decision was supported by substantial evidence and the Appeals Council was not required to make specific findings about Parks's new evidence, we affirm.

## I. BACKGROUND

In April 2010, Parks applied to the Social Security Administration for supplemental security income on behalf of her son, D.P., and alleged that he had suffered from a "learning disability, [attention deficit hyperactivity disorder], [and] verbal based intellectual deficits" since April 2008. The Administration denied the claim and denied it again on reconsideration. Parks requested a hearing before an administrative law judge.

At the hearing, Parks testified that D.P.'s speech "wasn't clear enough" to understand and that D.P. could not understand "big" or "simple" words. D.P. would take "an hour to wash dishes" because he could not focus. He needed constant reminders to do his chores. But D.P. played video games and watched TV, and listened to music on the computer. He used to play football in an organized league.

Documentary evidence established that D.P. suffered from mental impairments. In April 2010, Matt Butryn, Ph.D., diagnosed D.P. with attention deficit hyperactive disorder, general and verbal-based intellectual deficits, and a learning disorder. In May 2010, Dr. Matt Baker, D.P.'s primary care physician, stated that D.P. improved after he was prescribed Concerta. But in October 2010, Butryn completed an evaluation form in which he concluded that D.P. had "marked" limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself.

D.P.'s academic performance was weak in all areas. In January 2008, D.P. began an individualized education plan to combat a "Speech/Language Impairment." D.P. met the minimum competency standard in only one of five subject areas on his 2009 Criterion-Referenced Competency Test. He again met only one minimum competency standard in 2010. His intelligence quotient was measured between 64 and 73. D.P. received testing accommodations.

But D.P. also progressed in some academic areas. According to his fifth grade mid-quarter progress report, D.P. was "[p]rogressing toward the standard" in all subjects except writing. He achieved minimum competency on two of five subjects in the spring of 2011. According to his 2010–2011 progress report for his individualized education plan, D.P. was making progress toward three goals and met the goal of solving a fifth-grade multi-step word problem. In May 2011, he was in general education with co-teaching or supportive instruction in four of five classes, with special education only for a class on study skills. He knew his multiplication facts and could multiply two and three-digit numbers. During his sixth grade year, his grades after nine weeks were 100 in family and consumer sciences, 100 in a special education math class, 93 in Earth science, 79 in a general math class, 70 in language arts, 64 in social studies, 87 in French, and 25 in agriscience.

In February 2011, Elias Clinton, D.P.'s special education teacher, completed a teacher questionnaire. According to Clinton, D.P. was in the fifth grade, but had attained only third grade reading and math proficiency, and a second grade writing level. Under the rubric of "acquiring and using information," Clinton concluded that D.P. had "slight" to "obvious" problems in most areas, but a "serious" problem "[c]omprehending and doing math problems." D.P. required "extensive support from adults during all academic activities." D.P. also needed a "high

4

degree of assistance maintain[in]g focus during instructional activities and completing homework/class assignments."

Two agency consultants, William Gore, Ph.D., and Allen Carter, Ph.D, completed childhood disability evaluation forms. Gore explained that D.P. needed "much support," especially in reading, and that he had below average verbal and non-verbal reasoning. Gore concluded that D.P. suffered from severe impairments, but the impairments did not rise to the level necessary to make D.P. eligible for supplemental security income. Carter came to similar conclusions.

The administrative law judge denied Parks's application. The administrative law judge found that D.P. suffered from attention deficit hyperactivity disorder and borderline intellectual functioning but that his impairments did not "functionally equal[]" an impairment that would qualify D.P. for supplemental security income. In the domain of acquiring and using information, the administrative law judge found that D.P. had a "less than marked" limitation. The administrative law judge explained that D.P. played video games, watched television for hours each day, and that he had played organized sports in the past. D.P. also showed "progress through school."

When Parks requested that the Appeals Council review the denial, she submitted two relevant documents as new evidence. First, Parks submitted a questionnaire completed by D.P.'s sixth grade mathematics and extended learning

5

instructor, Kristin Spencer. According to Spencer, D.P. was in sixth grade, but performed at fourth grade levels in reading, math, and writing, and he "need[ed] supplemental resources to help understand the curriculum." Second, Parks submitted a questionnaire completed by Jennifer Wooten, one of his seventh grade teachers. According to Wooten, D.P. was in seventh grade, but reading at the level of second grader, doing math at the level of a fourth grader, and writing at the level of a third grader. Wooten explained that D.P. needed extensive support to accomplish anything academic.

The Appeals Council added Parks's new evidence to the record and considered it, but the Appeals Council "found no reason under [its] rules to review the . . . decision." Parks then filed a complaint in the district court to reverse the denial of her claim. *See* 42 U.S.C. § 405(g). The district court affirmed the denial.

## II. STANDARDS OF REVIEW

Two different standards of review govern this appeal. First, we "review the [Commissioner's] decision with deference to the factual findings and close scrutiny of the legal conclusions." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The Commissioner's factual findings are conclusive if supported by "substantial evidence," 42 U.S.C. § 405(g), which is "relevant evidence as a reasonable person would accept as adequate to support a conclusion," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Even if the evidence

6

preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Second, we review *de novo* the Commissioner's conclusions of law, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007), and the judgment of the district court, *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that substantial evidence supported the decision of the administrative law judge that D.P. had a "less than marked" limitation in the domain of acquiring and using information. Second, we explain that the Appeals Council did not err when it declined to review Parks's claim without making detailed findings of fact about her new evidence.

*A. Substantial Evidence Supported the Decision of the Administrative Law Judge.*

Parks argues that the administrative law judge erred when he found that D.P. had less than a marked limitation in the domain of "[a]cquiring and using [i]nformation." Parks argues that the administrative law judge failed to consider whether D.P. could function "independently" and that the evidence established that D.P. could not function independently. Parks's argument fails.

The Social Security Administration uses a sequential, three-step analysis to determine whether a child is disabled. The claimant must establish (1) whether the

7

child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(a); *id*. Pt. 404, Subpt. P, App. 1. The administrative law judge found, and the parties do not dispute, that D.P. satisfied the first two requirements. The administrative law judge also found, and the parties do not dispute, that D.P.'s impairment or combination of impairments does not meet or medically equal the severity of an impairment in the "Listing of Impairments." *Id*. Pt. 404, Subpt. P, App. 1.

The parties' dispute is limited to a discrete question about the third step of the analysis: whether D.P.'s impairment or combination of impairments "functionally equals the severity" of a listed impairment. To determine whether an impairment or combination of impairments "functionally equals" a listed impairment, the administrative law judge assesses the claimant on six domains, including (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id*. §§ 416.926a(a), (b)(1), (d). The claimant must establish that he suffers from an "extreme" limitation in one of the domains, or "marked" limitations in two of the domains. *Id*. § 416.926a(a). A "marked" limitation is one that "interferes seriously

8

with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(2)(i). "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*. The administrative law judge found that D.P. had a "marked" limitation in "attending and completing tasks" but that D.P. did not have any other "marked" limitations.

Parks challenges the finding that D.P. had a "less than marked" limitation in the domain of "acquiring and using information." Under that domain, the Administration "evaluate[s] how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments." Soc. Sec. Ruling, SSR 09-3p., Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Acquiring & Using Information" (S.S.A. Feb. 17, 2009). The regulations provide examples of skills that a "school-age" child should possess. The child "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv). The child "will need to use these skills in academic situations to demonstrate what [he] ha[s] learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." *Id*. And

9

the child "will also need to use these skills in daily living situations." *Id*. The child "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing . . . ideas, and by understanding and responding to the opinions of others." *Id*. The regulations also provide that adolescents—D.P. grew from a "school-age" child to an "adolescent" during the relevant timeframe—should "continue to demonstrate what [they] have learned in academic assignments" and "use what [they] have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation)." *Id*. § 416.926a(g)(2)(iv)–(v). Adolescents should be able to use "increasingly complex language" and also "learn to apply these skills in practical ways that will help [them] enter the workplace after [they] finish school." *Id*.

Parks argues that the administrative law judge failed to consider "the extent to which [D.P.] requires interventions and supports" and "disregarded" D.P.'s dependence on adults, but we disagree. The administrative law judge considered evidence that D.P. had difficulty functioning independently, including evidence that D.P. needed special education services with an "Individualized Education Program." The administrative law judge explained that Parks testified that D.P. does homework only with assistance and that D.P. receives testing accommodations. The administrative law judge also considered the evaluation that

10

Clinton completed, in which Clinton had stated that D.P. required "extensive support from adults during all academic activities." And the administrative law judge gave weight to Gore's evaluation, which stated that D.P. received "much support" academically. "[T]here is no rigid requirement that the [administrative law judge] specifically refer to every piece of evidence in his decision, so long as" our Court can "conclude [that] the [administrative law judge] considered [the claimant's] medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (second and fifth alteration in original) (internal quotation marks and citation omitted). The record establishes that the administrative law judge considered D.P.'s ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

Moreover, substantial evidence supports the finding by the administrative law judge that D.P. had a "less than marked" limitation in acquiring and using information. Two agency consultants concluded that D.P. had a less than "marked" limitation in acquiring and using information. D.P. had been treated only "conservatively" with medication, and even then he did not take the medication during the summer break. And D.P. played video games, used a computer, and had played organized football.

D.P. also had academic difficulties, but substantial evidence suggested that he was making progress in some areas. In fifth grade, he was "[p]rogressing toward

11

the standard" in all subjects except writing. D.P.'s annual progress report for May 2011 established that he was in general education with co-teaching or supportive instruction in four of five classes, and special education for only one class. At mid-term during sixth grade, he maintained perfect grades in two classes and grades between 70 and 93 in four other classes; his grades were below 70 in only two classes.

As the administrative law judge found, D.P. suffers from some limitation in the area of acquiring and using information and requires support in the academic sphere. But compared to other children his age, *see* Soc. Sec. Ruling, SSR 09-3p, there is "relevant evidence [that] a reasonable person would accept as adequate to support [the] conclusion," *Bloodsworth*, 703 F.2d at 1239, that D.P.'s limitation is less than "marked."

## B. The Appeals Council Is Not Required to Make Detailed Findings of Fact When It Denies a Request for Review.

Parks argues that the Appeals Council erred because it failed to make specific findings of fact about the evidence that it added to the record when it denied her request for review, but we again disagree. "The Appeals Council may deny or dismiss [a] request for review . . . ." 20 C.F.R. § 416.1467. But the Appeals Council is not required to make specific findings of fact when it denies review. It need only "consider the additional evidence" that is new, material, and chronologically relevant. *Id*. § 416.1470(b). The Appeals Council stated that it

12

considered the new evidence that Parks submitted, and the Appeals Council added the evidence to the record. The Appeals Council was not required to do more.

Our Court recently decided *Mitchell v. Commissioner, Social Security Administration*, which controls this question. 771 F.3d 780. In *Mitchell*, we held that there is no requirement that "the Appeals Council . . . provide a detailed discussion of a claimant's new evidence when denying a request for review." *Id.* at 783. We explained that, where "the Appeals Council expressly stated in its letter to [the claimant] that it had considered his additional evidence, . . . we ha[d] no basis . . . to second-guess that assertion." *Id*. Parks's situation is indistinguishable from that of the claimant in *Mitchell*. Parks submitted additional evidence to the Appeals Council, and the Appeals Council added the evidence to the record, stated that it considered the evidence, and denied review. As in *Mitchell*, nothing suggests that the Appeals Council failed to consider Parks's new evidence.

Parks's reliance on *Epps v. Harris*, 624 F.2d 1267 (5th Cir.1980), and *Bowen v. Heckler*, 748 F.2d 629 (11th Cir.1984), is misplaced. In *Epps*, our predecessor court found that the Appeals Council had not "adequately evaluate[d]" new evidence. 624 F.2d at 1273. But as we explained in *Mitchell*, the decision in *Epps* "arose in a different procedural context," where the Appeals Council *affirmed* the decision of the administrative law judge. *Mitchell*, 771 F.3d at 783. *Epps* has little bearing on a denial of a request for review. *Bowen* is inapposite too. In

13

*Bowen*, our Court "concluded the record established that the Appeals Council did not adequately evaluate additional evidence submitted to it because it viewed each of the claimant's impairments in isolation and did not consider their combined effect." *Mitchell*, 771 F.3d at 784. "*Bowen* requires the Appeals Council to apply the correct legal standards in performing its duties," but it does not require that the Appeals Council include with every denial of review a "detailed rationale for why each piece of new evidence submitted to it does not change the [administrative law judge]'s decision." *Mitchell*, 771 F.3d at 784.

Parks argues that in *Mitchell* we limited our holding to situations where the new evidence was "cumulative" or "not chronologically relevant," but Parks misunderstands *Mitchell*. We held, in the alternative, that "the new evidence Mitchell submitted to the Appeals Council did not render the Commissioner's denial of benefits erroneous." *Id*. at 785. But "our conclusion that the Appeals Council is not required to explain its rationale for denying a request for review," *id*. at 784, was not dependent on that alternative holding.

Parks challenges only the failure of the Appeals Council to make detailed findings of fact. Because the Appeals Council is not required to make detailed findings, we need examine its decision no further. If Parks had asked us to reverse the denial of review on the merits, we could have examined the new evidence that she presented to the Appeals Council and reviewed its decision.

14

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of the Commissioner.