[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11787
Non-Argument Calendar

_____

D.C. Docket No. 3:17-cv-00976-MCR-MJF


RUTH ELLEN REEVES,

Plaintiff–Appellant,

versus

SOCIAL SECURITY COMMISSIONER,

Defendant–Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 19, 2019)

Before WILLIAM PRYOR, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Ruth Ellen Reeves, *pro se*, appeals the district court's order affirming the decision of the Social Security Commissioner ("Commissioner") to deny her application for disability insurance benefits ("DIB").  We affirm.

## I. BACKGROUND

On March 4, 2015, Reeves applied for a period of disability and DIB, alleging disability beginning on March 1, 2014.  In her disability report, Reeves indicated that she had stopped working because she had suffered from: ruptured discs in her neck and back; back problems; a triple discectomy with fusion related to a neck break on three levels; continued migraines following months of migraine attacks; controlled diabetes; and arthritis in many parts of her body stemming from injuries.  Reeves previously had worked as a cashier, sales attendant, and customer-service representative.  Her application was initially denied in March 2015, after which she filed a written request for an administrative hearing before an administrative law judge ("ALJ").  While the hearing was scheduled for February 2017, it actually occurred in May 2017.

At the May 2017 hearing, the ALJ added to the record all of the evidence that previously had been submitted, as well as the evidence submitted during the hearing.  The ALJ heard testimony from Reeves; Reeves's daughter; and Rick Freeman, a vocational expert ("VE").  According to Reeves's testimony, she had not worked full time since 2006.  She had stopped working because her neck had

2

been "severely broken on three levels," she had been diagnosed with a severe case of degenerative disc disease, and her liver was "real bad."  Reeves's daughter testified regarding a car accident in April 2014 in which Reeves broke her neck for a second time.  She also testified that Reeves was incapable of doing most of her daily activities because she was extremely limited by her pain and migraines.

The VE testified that Reeves's past work as a cashier and sales attendant had involved light and unskilled work, while her work as a customer service representative had involved light and semi-skilled work.  The ALJ asked the VE whether a hypothetical person could perform Reeves's past work, where that person: had the same educational and vocational history; could perform the full range of medium work with occasional postural and manipulative limitations; had environmental limitations regarding vibrations, hazardous machines, heights, and respiration; and had no mental limitations.  The VE responded that someone with those limitations could perform Reeves's past work.  The VE then offered the positions of information clerk, mail clerk or mail sorter, parking lot attendant, and office helper as jobs available in the national economy that someone with those limitations could perform.

The record also included the medical opinions of Dr. Efren Baltazar and Dr. Stephen Schwartz.  Dr. Baltazar, who opined on Reeves's residual functional capacity ("RFC") in May 2015, found that, notwithstanding her bulging discs and

3

slight neural foraminal encroachment, Reeves could: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; sit, stand and/or walk for 6 hours in an 8-hour workday; and push and/or pull in accordance with her lifting restrictions.  However, Dr. Baltazar stated that Reeves should avoid concentrated exposure to extreme heat, noise, and vibrations due to her migraines.  Dr. Stephen Schwartz, who had performed a consultative RFC medical examination of Reeves in March 2017, noted that Reeves complained of back pain starting in 2014, neck pain starting in 2000, liver disease, heart disease, degenerative disc disease in her back and neck, arthritis, migraines, and severe back pain.  Based on a physical evaluation, neuropsychological examination, and range-of-motion report, Dr. Schwartz opined that Reeves could: lift and/or carry 21 to 25 pounds frequently; sit for 6 hours out of an 8-hour workday; stand and/or walk for 3 hours out of an 8-hour workday; use her hands and feet without limitation; climb stairs, ramps, ladders, and scaffolds frequently; and balance, stoop, kneel, crouch, and crawl continuously.  Dr. Schwartz also opined that Reeves could frequently tolerate exposure to unprotected heights, extreme cold and heat, vibrations, and moderate noise, and was not prevented from engaging in normal daily activities.

The ALJ denied Reeves's claim, concluding that she had not been under a disability since she filed her application within the meaning of the Social Security Act and for the purposes of obtaining DIB.  The ALJ applied the five-step analysis

used to determine if an individual is disabled.  At step two, the ALJ found that Reeves had three substantial impairments: cervical/lumbar degenerative disc disease; a triple discectomy with fusion in 2007 and cervical reinjury in April 2014; and arthritis.  At step three, the ALJ found that Reeves's degenerative disc disease did not constitute an impairment or combination of impairments that met or was medically equal to the severity of one of the impairments listed in the 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  The ALJ found that Reeves was capable of performing past relevant work as a cashier, sales attendant, and customer-service representative, as the VE had testified that those jobs were at the light exertional level and involved only unskilled or semi-skilled work. Additionally, the ALJ noted that jobs existed in the national economy in significant numbers that Reeves could perform given her RFC, including informational clerk, mail clerk, parking lot attendant, and office helper.  Given the availability of work that Reeves could perform, the ALJ concluded found that she was not disabled for the purposes of the Social Security Act.

The Appeals Council denied Reeves's request for review.  Reeves then filed a complaint in the district court seeking review of the Commissioner's denial of her application for DIB.  A magistrate judge issued a report and recommendation ("R&R") recommending that the district court affirm the Commissioner's decision.

5

The district court reviewed the record *de novo*, adopted the R&R over Reeves's objections, and affirmed the Commissioner's decision.

## II. DISCUSSION

### A. Whether the ALJ Committed Reversible Procedural Errors

As an initial matter, Reeves questions our jurisdiction to review her claims because the total amount of disability benefits due to her exceeds our "limitations," and the record upon which we would issue an opinion is "purposely incomplete and illegally obtained." Reeves then argues that the ALJ committed reversible error by failing to bring to the hearing any of the evidence that she previously had submitted. She also argues that the ALJ violated Article III of the U.S. Constitution by stopping the initial hearing and requiring her to get examined by a doctor and an unnamed chiropractor before the hearing was resumed, even though she had two letters from the Social Security Administration ("SSA") that indicated that no such examination was necessary. In addition, she contends that the ALJ ignored the medical evidence that she had submitted, relying instead on evidence that Reeves had informed him was "fruit of the poisonous tree, illegally obtained with a disregard to Social Security's own laws." She further argues that the SSA's medical examiners were either provided incomplete medical records or ignored those records, in violation of her right to equal protection. Finally, she contends that the ALJ and VE made biased statements during the hearing that do not appear

in the certified transcript.  Specifically, she asserts that, in response to her question about whether someone with her medical impairments could perform the duties of the jobs offered by the VE, the VE responded, "If it is YOU! Yes!" after which the ALJ rephrased the question by asking if the same would hold true for "a *NORMAL* person."

Following the issuance of the Commissioner's final decision, "irrespective of the amount in controversy," a party may seek review of that decision in the district court.  42 U.S.C. § 405(g).  We, in turn, have jurisdiction over all final decisions of the district court.  28 U.S.C. § 1291.  We will not consider on appeal an issue that a party has waived by not first raising that issue before the district court.  *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 n.2 (11th Cir. 2012).  Where a party was informed of the time period for objecting to a magistrate judge's R&R and the consequences for failing to do so, we will review only for plain error the district court's order, to the extent that it is based on the R&R's unobjected-to factual and legal conclusions.  11th Cir. R. 3-1.

We review the Commissioner's conclusions of law and the district court's judgment *de novo*.  *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015).  The Commissioner's factual findings are conclusive if they are supported by substantial evidence, which is relevant evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*

7

Generally, an applicant for DIB bears the burden of proving that they are disabled and must submit evidence in support of her claim. 20 C.F.R. § 416.912(a)(1). The SSA may ask an applicant to attend one or more consultative examinations from a qualified medical examiner, though such a request generally will not be made until the SSA has made every reasonable effort to obtain evidence from the applicant's medical sources. *Id.* § 416.912(b)(2). A consultative examination may be requested to try to resolve inconsistencies in the evidence, or when the evidence as a whole is insufficient to support a determination on an applicant's claim. *Id.* § 416.919a(b). The SSA will provide the medical examiner any necessary background information about the applicant's condition. *Id.* § 416.917. A medical examiner is "qualified" if he or she is licensed in the state where the examination will take place and has the experience and training to perform the requested examinations or tests. *Id.* § 416.919g(b).

The ALJ must base his decision on the preponderance of the evidence offered at the hearing or otherwise included in the record. *Id.* § 416.1453. The ALJ will consider all evidence in the record when making a disability determination. *Id.* § 416.920. All hearings are recorded, and a typed copy of that recording will be prepared if, among other things, the applicant seeks review of her case in the district court. *Id.* § 416.1451(a)(2). The official record contains all of the evidence upon which the ALJ relied in making a determination, including

"applications, written statements, certificates, reports, affidavits, medical records, and other documents that were used in making the decision under review and any additional evidence or written statements that the administrative law judge admits into the record."  *Id.* § 416.1451(b).

A presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased.  *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S. Ct. 1665, 1670 (1982).  That presumption can be rebutted by showing a conflict of interest or some other specific reason warranting the ALJ's disqualification.  *Id.*, 102 S. Ct. at 1670.  The party asserting a disqualifying interest bears the burden of establishing its existence.  *Id.* at 196, 102 S. Ct. at 1670.  Bias is shown where an objective, fully-informed lay person would have significant doubt about a judge's impartiality.  *In re Walker*, 532 F.3d 1304, 1310 (11th Cir. 2008).  Generally, bias sufficient to disqualify a judge must stem from an extrajudicial source, except where a judge's remarks in a judicial context show such pervasive bias and prejudice that it constitutes bias against a party.  *Id.* at 1310-11.

As an initial matter, we have jurisdiction to review Reeves's claims because she was permitted to seek review of the denial of her claim for DIB in the district court "irrespective of the amount in controversy," and we have jurisdiction over the district court's affirmance of the Commissioner's decision.  42 U.S.C. § 405(g); 28 U.S.C. § 1291.  As for her claim that we lack jurisdiction over her case

9

because any decision would be "poisoned" to the extent it would be based on a "purposefully incomplete and illegally obtained" record, she conflates the issue of whether we have the authority to decide a given case with the issue of whether that decision would be factually and legally correct based on the record before us. Because our ability to review her case is not dependent on the accuracy of the record on appeal, but rather, the statutorily invested authority to review final orders of the Commissioner following review by the district court, we have jurisdiction over Reeves's appeal.

The record does not support Reeves's claim that the ALJ was biased or prejudiced against her. First, the hearing transcript contained in the official record does not contain the alleged biased statements that Reeves asserts the ALJ and VE made, and the ALJ is presumed to have acted honestly and with integrity in compiling the record. *See McClure*, 456 U.S. at 195, 102 S. Ct. at 1670. Second, there is no evidence supporting her claim that those comments were purposefully withheld from inclusion in the official record, nor has she demonstrated a conflict of interest or extra-judicial source of bias or prejudice that would cause an ordinary person to question the ALJ's impartiality in compiling the record. Third, the statements allegedly made by the ALJ and VE during the hearing would not warrant remand because, even if they did make those statements, they do not demonstrate bias or prejudice that call into question the ALJ's impartiality. *See In*

10

*re Walker*, 532 F.3d at 1310.  Finally, the alleged statements are not so extreme as to suggest that the ALJ or VE harbored any malice or ill-will towards Reeves that might indicate that they were biased against her.

While Reeves argues that the ALJ committed reversible error by failing to bring to the initial February 2017 hearing any of the evidence that she previously had submitted, this argument is without merit.  Reeves made this argument below in her initial filings with the district court; however, she failed to object to the R&R's conclusion that she had not shown that she was prejudiced by the ALJ's alleged failure to come to her initial hearing with all of the record evidence, and she was informed of the time frame for objecting to the R&R's factual and legal conclusions and the consequences for failing to do so.  Thus, we review Reeves's claim only for plain error. 11th Cir. R. 3-1.  The record does not show that the ALJ erred, much less plainly so, by arriving at the initial hearing unprepared.  The record does not contain a transcript of a February 2017 hearing; thus, there is no evidentiary support for Reeves's claim that the ALJ was unprepared for that hearing.  While the regulations governing the issuance of the ALJ's decision require that he consider all of the record evidence in making that determination, those regulations are silent on the issue of whether the ALJ must have the record at the hearing that precedes that determination.  *See* 20 C.F.R. § 416.920.  The record

also indicates that a full hearing occurred in May 2017, and the record shows that all of the evidence submitted prior to that hearing was added into the record.

Similarly without merit is Reeves's claim that the ALJ violated Article III by requiring her to undergo consultative examinations by Dr. Schwartz and an unnamed chiropractor.  Reeves has waived that claim by failing to first present it to the district court in any of her filings below, even when those filings are liberally construed.  *See Chandler*, 695 F.3d at 1198 n.2; *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (noting that we liberally construe *pro se* filings).  Further, the SSA is an executive-branch agency; thus, its actions, proper or not, cannot violate Article III.  *See* U.S. Const. art. III, § 1 (vesting the judicial power of the United States in the U.S. Supreme Court and inferior courts established by Congress); 42 U.S.C. § 901(a) (establishing the SSA as an independent agency within the executive branch).  Even if Reeves's claim is construed as asserting that the ALJ erroneously referred her to Dr. Schwartz and a chiropractor for consultative examinations, the ALJ was authorized to make those referrals, 20 C.F.R. § 416.912(b)(2).  Also, nothing in the record suggests, nor has Reeves asserted, that Dr. Schwartz and the unnamed chiropractor were unqualified within the meaning of the regulations governing consultative examination.  *Id.* § 416.919g(b).  Lastly, although Reeves claims to have submitted two letters indicating that the consultative medical examinations were unnecessary, she has not indicated the

12

source or contents of those letters, nor has she shown that those letters would have precluded the ordering of the examinations where the ALJ felt that they were necessary to make a determination on her DIB claim. *Id.* § 416.919a(b).

The ALJ also did not err by failing to provide Dr. Schwartz with Reeves's complete medical records because the ALJ was only required to provide Dr. Schwartz with the background information necessary to conduct the RFC exam for which he was consulted. The record shows that Dr. Schwartz was tasked with performing an RFC examination, which focuses on an applicant's *current* physical capabilities, rather than an applicant's history of impairments. Because Dr. Schwartz did not require Reeves's full medical history to establish her RFC at the time of the examination, the ALJ was not required to provide Dr. Schwartz with her complete medical records. 20 C.F.R. § 416.917. To the extent that Reeves's claim is construed as asserting that the ALJ failed to provide Dr. Baltazar with her medical records, that claim is not supported by the record, since Dr. Baltazar's May 2015 RFC assessment references multiple pieces of medical evidence in the record.

Finally, Reeves has waived her claim that the ALJ improperly relied on evidence that was "fruit of the poisonous tree, illegally obtained with a disregard to Social Security's own laws," rather than the evidence that she submitted. Reeves has not indicated what that allegedly improper evidence was, she has failed to

13

indicate what laws the ALJ violated in relying on that evidence, and her single

reference to that "poisonous" evidence is insufficient to preserve it for review.  See

*Timson*, 518 F.3d at 874; *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681

(11th Cir. 2014) (recognizing that a party can abandon a claim or issue when they

only make "passing references to it" in the "statement of the case"' or "summary

of the argument").[1]

## B. Whether the ALJ Failed to Consider All of Reeves's Physical Impairments

Reeves also argues that the ALJ disregarded most of her physical conditions

when he did not find that she suffered from multiple impairments within the

meaning of 20 C.F.R. § 404.1523.  An individual claiming Social Security

disability benefits must prove that she is disabled.  *See Moore v. Barnhart*, 405

F.3d 1208, 1211 (11th Cir. 2005).  The ALJ uses a five-step, sequential evaluation

process to determine whether a claimant is disabled.  *Winschel v. Comm'r of Soc.*

*Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  This process includes an analysis of

whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has

a severe and medically-determinable impairment; (3) has an impairment, or

combination thereof, that meets or equals a Listing, and meets the duration

---

[1] We note that Reeves also makes cursory and unsupported claims that the district court failed to grant her motion for an expedited judgment, improperly disregarded the medical opinion that had been submitted to the court, and relied on an illegal and incomplete record.  However, because she has failed to support these assertions with citations to legal authority or evidence in the record, her passing statements to those issues amounts to a waiver of those claims.  *See Sapuppo*, 739 F.3d at 682; *Timson*, 518 F.3d at 874.

requirement; (4) can perform past relevant work, in light of his RFC; and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. *See id.*; 20 C.F.R. § 404.1520(a)(4). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

At step three, the ALJ must determine whether any of the applicant's impairments meets or equals an impairment contained in the Listings, or, if none of the applicant's individual impairments constitutes a listed impairment, whether the combination of the applicant's impairments is medically equal to a listed impairment. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). The ALJ's statement that an applicant's impairments or combination thereof do not meet or equal a listed impairment constitutes evidence that the ALJ considered the combined effect of the applicant's impairments. *Id.*

Here, the ALJ did not fail to consider whether Reeves's impairments met or equaled a listed impairment because the ALJ's decision shows that he considered the combined effect of her impairments. First, the ALJ's decision noted that he was required to consider whether any one of her severe impairments or combination thereof met or medically equaled one of the impairments contained in the Listings, which is evidence that he considered the cumulative effect of Reeves's impairments. *Id.* Further, in assessing Reeves's RFC, the ALJ indicated

15

that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," which shows that he considered all of Reeves's impairments relative to the medical record.  Finally, Reeves points to no evidence that suggests that the ALJ failed to fulfill his obligations at step three.

**AFFIRMED.**