[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11928
Non-Argument Calendar
_____

D.C. Docket No. 8:17-cv-02461-CEH-AEP


WENDY L. MEADE,

                                                        Plaintiff–Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                        Defendant–Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 23, 2020)

Before MARTIN, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Wendy Meade appeals the district court's affirmance of the Social Security Administration Commissioner's decision denying her application for disability insurance benefits (DIB).  Meade asserts Arline Colon, the administrative law judge (ALJ) who presided over her proceedings, erred in failing to recuse herself on remand from the Appeals Council, despite evidence stemming from Meade's administrative proceedings that indicated ALJ Colon was biased or prejudiced against her.   Meade also contends ALJ Colon committed reversible error because ALJ Colon's decision was not supported by substantial evidence, insofar as she: failed to consider the episodic nature of Meade's panic disorder; improperly required eyewitness accounts of Meade's panic attacks by medical professionals; improperly required corroborating testimony from Meade's former coworkers and employers regarding her panic disorder's effect on her ability to work; and discounted the medical opinions of three physicians who treated or evaluated Meade without good cause for doing so.  After review, we affirm in part, and reverse and remand in part.

## I.  DISCUSSION

### A.  Bias of ALJ Colon

A presumption exists that judicial and quasi-judicial officers such as ALJs are unbiased.  *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  That presumption can be rebutted by showing a conflict of interest or some other specific reason

warranting the ALJ's disqualification. *Id.* The party asserting a disqualifying interest bears the burden of establishing its existence. *Id.* at 196. Bias is shown where an objective, fully-informed lay person would have significant doubt about a judge's impartiality. *In re Walker*, 532 F.3d 1304, 1310 (11th Cir. 2008). Generally, bias sufficient to disqualify a judge must stem from an extrajudicial source, except where a judge's remarks in a judicial context show such pervasive bias and prejudice that it constitutes bias against a party. *Id.* at 1310–11. Judicial rulings, routine administrative efforts, and ordinary admonishments (whether or not legally supportable) to counsel and witnesses that occur during the course of judicial proceedings that neither rely upon knowledge acquired outside of such proceedings nor display a deep-seated and unequivocal antagonism rendering fair judgment impossible are inadequate grounds for recusal. *Liteky v. United States*, 510 U.S. 540, 556 (1994).

The record does not support Meade's claim that ALJ Colon was biased or prejudiced against her. Although Meade argues ALJ Colon's bias was shown by her refusal to provide an evidentiary hearing in 2014, as ordered by the Appeals Council on remand, Meade offers no evidence in support of her claim that ALJ Colon willfully misread § I-3-7-40(E) of the Hearings, Appeals, and Litigation and Law Manual. To the extent Meade asserts ALJ Colon's 2017 decision is indicative of bias based on her discussion and interpretation of the evidence, an unfavorable

3

judicial decision is not indicative of bias without other evidence of bias. *Liteky*, 510 U.S. at 556. Similarly, Meade's SSA Office of Disability Adjudication and Review's Division of Quality Service complaint about ALJ Colon, which arose out of Meade's administrative proceedings, was an inadequate basis for recusal absent extrajudicial sources of bias or other evidence of antagonism. *Id.*; *In re Walker*, 532 F.3d at 1310. Meade has not cited any overt, pervasive statements by ALJ Colon indicating she was biased against Meade, nor has Meade offered an extrajudicial reason for ALJ Colon's alleged bias or prejudice against her. Accordingly, because Meade cannot show an objective, fully-informed lay person would have significant doubt about ALJ Colon's impartiality in the absence of such evidence, we affirm the district court's denial of Meade's bias claim.

*B. Substantial Evidence*

We review the Commissioner's conclusions of law and the district court's judgment *de novo*. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018). The Commissioner's factual findings are conclusive if they are supported by substantial evidence, which is relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* Even where the evidence preponderates against the Commissioner's factual findings, we must affirm if the decision is supported by substantial evidence. *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015). Under this

standard of review, we will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). However, we will not "merely rubber-stamp a decision . . . [but] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (quotation marks omitted). Remand is appropriate for further factual development before the ALJ where the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Washington*, 906 F.3d at 1358.

"An individual claiming Social Security disability benefits must prove that she is disabled." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178. This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable impairment; (3) has an impairment, or combination thereof, that meets or equals a Listing, and meets the duration requirement; (4) can perform past relevant work, in light of her RFC; and (5) can make an adjustment to other work, in light of her RFC, age, education, and work experience. *See id.*; 20 C.F.R. § 404.1520(a)(4).

5

An ALJ considers many factors when weighing medical opinion evidence, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record. 20 C.F.R. § 404.1527(c). The ALJ may discount any medical opinion when the opinion is conclusory or inconsistent with the record, or when the evidence supports a contrary finding. *Id.* Physicians' opinions about a claimant's abilities and restrictions constitute relevant evidence but are not determinative, because the ALJ has the responsibility of assessing the claimant's RFC. *Id.* § 404.1527(d). An ALJ must give a treating physician's opinion "substantial or considerable weight" unless there is "good cause" not to do so. *Schink*, 935 F.3d at 1259. "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Id.* The ALJ must clearly articulate her reasons for giving less weight to a treating physician's opinion. *Id.*

In *Schink*, we vacated the ALJ's denial of disability benefits, holding, in relevant part, that the ALJ failed to give good cause for discounting the opinion of the claimant's two treating physicians while giving substantial weight to the opinion of two evaluative physicians who had never treated the claimant. *Id.* at 1256, 1260. As part of the ALJ's finding the treating physicians' opinions were

6

due little weight, the ALJ found their treatment notes indicated only mild limitations during the claimant's mental-status examinations. *Id.* at 1262. We noted the ALJ did not clearly articulate the basis for that conclusion but stated it was unclear how the record could support such a conclusion. *Id.* We stated some of the claimant's mental-status examinations were better than others with respect to various metrics, but nevertheless held the alleged inconsistencies within those medical records were insufficient to discount the treating physicians' opinions because "[i]t is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Id.* at 1262–63. We also noted the fact the claimant could remain on topic during a conversation on examination was not inconsistent with a finding the claimant suffered from a highly disruptive mood disorder that rendered him incapable of working. *Id.* at 1263. Finally, we stated the ALJ's reliance on the claimant's ability to engage in solitary activities, such as watching television or walking the dog, was not a basis to discount the treating physicians' opinions, particularly with regard to their opinions regarding the claimant's ability to interact with others. *Id.* at 1264.

ALJ Colon's decision was not supported by substantial evidence because her denial of Meade's DIB claim relied primarily on alleged inconsistencies or

7

interpretations of the medical opinions of physicians who treated or evaluated Meade that are not adequately supported by the record. *See id.* at 1257. In evaluating Meade's claim, ALJ Colon stated that, although Meade's pattern of work from the late 1990s onward might have tended to support her disability claim, that evidence was equivocal because it was not supported by corroborating evidence from Meade's former coworkers or employers, or medical evidence. However, Meade's ex-husband, Steven South, stated Meade began experiencing difficulty at work due to her excessive worrying and fears about leaving the house, for which she began taking excessive amounts of medication, which supports that Meade's troubled work history was caused by her anxiety disorder. Further, Meade testified that, as of 2006, she was taking Xanax in quantities far exceeding her prescribed dose in an unsuccessful attempt to manage her panic disorder so she could continue to work. At her 2009 disability hearing, Meade also stated she had previously filed for disability in 2001 and 2005 due to her panic attacks, which indicates her condition had worsened to some degree as early as 2001. Thus, while ALJ Colon cited the lack of certain corroborating evidence in concluding Meade's work history was not supportive of her disability claim, Meade nevertheless provided her own supportive testimony and South's corroborating evidence, and there was no contrary evidence in the record that supported ALJ Colon's finding that Meade's work history was not tied to her panic disorder. *See id.* at 1257.

8

Next, in assigning little weight to Dr. Karl Jones' opinion, ALJ Colon cited inconsistencies within his September 2006 testimony. Specifically, ALJ Colon stated Dr. Jones had "paradoxically" stated Meade had made some, albeit insignificant, progress under his care, even though he also stated her global-assessment-of-functioning (GAF) score had decreased from 60 to 50 over the same time period. But Dr. Jones' opinion as Meade's treating physician was due substantial or considerable weight absent good cause to discount it, and there is no inherent contradiction between the idea Meade had made some *insignificant* progress under Dr. Jones' care while her overall ability to function simultaneously decreased due to the addition of the stress stemming from her divorce. *See id.* at 1259. Further, Dr. Jones' assessment of a GAF score of 50 was in line with the GAF scores of 55 and 65 Meade received from Drs. Lia Nardone and Gerald Hodan that same year, and thus, the other contemporaneous medical-opinion evidence in the record did not support a finding that Dr. Jones' opinion was due little weight. There is also no inherent inconsistency between Meade's GAF score of 75 from October 2006—which represented a 25-point increase from the month before—given the fluctuating nature of Meade's anxiety. *See id.* at 1262-63. And, in any event, Dr. Jones subsequently explained Meade's average GAF score was 60, which he considered to be a large functional impairment, based on his long-term observations of her. Thus, even if ALJ Colon was correct to discount Dr.

9

Jones' October 2006 opinion of Meade's condition, she did not properly consider his opinion as Meade's treating physician because that one treatment record did not make his *overall* opinion of Meade inconsistent with the record such that his opinion could be given little weight across the board.  20 C.F.R. § 404.1527(c); *Schink*, 935 F.3d at 1259, 1262-63.

ALJ Colon similarly erred in giving little weight to Dr. Hodan's opinion that Meade would have issues with reliability.  ALJ Colon stated that Dr. Hodan's opinion was due little weight because:  there was no evidence that Meade was late to, failed to show for, or cancelled any medical appointments due to her condition; it largely relied on Meade's self-reported symptoms; Meade had been on a consistent prescription of Xanax for many years; Meade had never been hospitalized due to her panic disorder; Meade did not provide any evidence of reliability issues from her former coworkers or employers nor evidence of an actual deterioration of her condition while at work; and no medical professional had witnessed one of Meade's attacks.  However, as discussed above, Meade provided corroborating evidence indicating her extensive work history was due to her panic disorder, and it is unclear how her ability to consistently show up for medical appointments that occurred monthly or every few months was indicative of her ability to reliably report to work on a daily or near-daily basis.  Relatedly, it is unclear why ALJ Colon required corroborating evidence that Meade had

experienced a panic attack while at work, as the record indicates Meade's disorder affected her reliability by inhibiting her ability to regularly report to work, regardless of whether she also suffered from panic attacks while at work. *See Schink*, 935 F.3d at 1263-64. ALJ Colon's reliance on Meade's consistent Xanax prescription history was also misplaced, since Meade testified that, immediately before she filed for disability, she was taking dosages far exceeding her prescribed amount to manage her anxiety, and her September 2007 request for an early Xanax refill suggests she continued to need above-prescribed levels of medication to manage her condition.

As for the lack of any eyewitness accounts by medical personnel, Meade explained she scheduled outings in such a way that her Xanax would be at full-strength when she needed to leave the house. Further, she provided corroborating statements regarding her frequent panic attacks from South, Richard Holland, Thomas Harfst, and Felicia Barr, and ALJ Colon did not explain why an observation by medical personnel would have been more illuminating, since the core problem with Meade's panic disorder as it related to her ability to work was the fact it frequently prevented her from being able to leave her home. *See Schink*, 935 F.3d at 1264. In addition, ALJ Colon failed to explain why Dr. Hodan's opinion was due less weight because it was largely based on Meade's self-reporting, as one would expect a psychiatric evaluation to largely rely on such

11

testimonial evidence, particularly during an initial evaluation, and Meade's self-reports are corroborated by the record evidence.  Therefore, because Dr. Hodan's opinion was not contradicted by other record evidence and ALJ Colon's stated reasons for discounting his opinion are unpersuasive, ALJ Colon erred in giving Dr. Hodan's opinion little weight.  20 C.F.R. § 404.1527(c).

Next, ALJ Colon erred in assigning little weight to Dr. Nardone's opinion from March 2007 that Meade would be unable to maintain employment due to her panic disorder because that finding is not supported by substantial evidence.  In discounting Dr. Nardone's opinion, ALJ Colon stated that opinion was inconsistent with Dr. Nardone's treatment notes.  First, ALJ Colon stated Dr. Nardone's treatment notes from January and March 2008 indicated Meade was less anxious following the finalization of her divorce, and by January 2009, Meade's agoraphobia was focused on her fear of bridges.  However, there is nothing inconsistent with the idea that Meade was unable to maintain employment in 2007 due to her panic disorder, and the idea her anxiety was reduced one year later following the finalization of her divorce, which was a significant source of stress. *See Schink*, 953 F.3d at 1262-63.  Further, although Meade reported in January 2009 that she was anxious about having to cross a bridge, nothing in Dr. Nardone's treatment notes indicate Meade's agoraphobia was solely focused on that fear.  To

12

the contrary, Dr. Nardone's January 2009 treatment notes state Meade's fear of bridges was an element of Meade's panic disorder, not the sole cause thereof.

ALJ Colon also cited the fact Dr. Nardone did not opine for how long Meade would be unable to maintain employment as a basis for giving that opinion little weight.  But ALJ Colon did not state why the lack of a long-term prognosis justified discounting Dr. Nardone's opinion.  Further, there is nothing within Dr. Nardone's March 2007 treatment notes that suggests her assessment of Meade's ability to work during a time when Meade reported breakthrough panic attacks despite her Xanax prescription and the stress associated with her divorce was meant to be anything other than an evaluation of Meade's then-current situation.  And, even if Meade was able to better manage her symptoms *after* the finalization of her divorce in 2007, Dr. Nardone's December 2006 and March 2007 assessments suggest Meade was unable to work while her divorce was pending in 2006 and 2007.  ALJ Colon's reliance on Meade's normal speech, euthymic affect, lack of psychosis, linear thought processes, and normal cognitive functions also do not support the assignment of little weight to Dr. Nardone's opinion because ALJ Colon did not provide any reason why those evaluations were inconsistent with Meade's inability to reliably leave her house or remain at work due to her panic disorder and agoraphobia, which intermittently but consistently incapacitated her.  *See Schink*, 935 F.3d at 1264.  Finally, for the reasons discussed above, Dr.

13

Nardone's opinion is not inconsistent with the opinions of Drs. Jones and Hodan, who also concluded Meade's panic disorder would inhibit her ability to maintain employment. Thus, because ALJ Colon's finding that Dr. Nardone's opinion was due little weight was not based on its conclusory nature or inconsistencies with Dr. Nardone's treatment records or other record evidence, ALJ Colon did not have good cause to discount Dr. Nardone's opinion. *See id.* at 1259.

Therefore, ALJ Colon's findings that the opinions of Drs. Jones, Hodan, and Nardone were due little weight is not supported by substantial evidence, and the district court erred in affirming the denial of Meade's DIB application. *See Washington*, 906 F.3d at 1358.

## II.  CONCLUSION

We affirm as to Meade's claim of bias, and reverse and remand to the district court with instructions to remand Meade's claim to the Commissioner for proper consideration of the medical-opinion evidence.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**